REBECCA A. PETERSON (241858)
**GEORGE FELDMAN MCDONALD, PLLC**
1650 W. 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
E-mail: rpeterson@4-justice.com

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

**GWENDOLYN CROCKRAN**, *on behalf of herself and as parent and guardian of her minor child, John Doe, and on behalf of all others similarly situated,*

Plaintiff,

v.

**POWERSCHOOL HOLDINGS, INC.**,

Defendant.

**CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND EQUITABLE RELIEF FOR:**

1. **Negligence**
2. **Breach of Fiduciary Duty**
3. **Invasion of Privacy**
4. **Declaratory Judgment**
5. **Unjust Enrichment**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

1. Plaintiff Gwendolyn Crockran ("Plaintiff" or "Plaintiff Crockran"), individually and as a parent and guardian of her minor child, and on behalf of all other persons similarly situated, by and through her attorneys, upon personal knowledge as to her and her minor child's acts and experiences, and upon information and belief as to all other matters alleges the following against PowerSchool Holdings, Inc. ("Defendant" or "PowerSchool"):

## NATURE OF THE ACTION

2. Plaintiff brings this Class Action Complaint against Defendant to seek recovery on behalf of herself and her minor child, and all other similarly situated people (the "Class" or "Class Members," defined herein), based upon Defendant's failure to properly secure and safeguard the personally identifiable information ("PII") and personal health information ("PHI") (collectively,

"Private Information") from cybercriminals.

3. Defendant PowerSchool operates an education technology ("EdTech") platform specializing in data collection, storage, and analytics. PowerSchool's primary customers are schools and school districts. In October 2024, PowerSchool was acquired by Bain Capital for $22.80 per share in cash, a total enterprise value of approximately $5.6 billion.[1]

4. PowerSchool serves over 60 million K-12 students in more than 90 countries.[2] Its products have been deployed in more than 90 of the largest 100 districts by student enrollment in the United States.

5. On December 28, 2024, PowerSchool learned that a hacker illegally accessed the Private Information of employees and students from customers worldwide by exploiting the user account of a PowerSchool technical support employee (the "Data Breach"). The cybersecurity hack resulted in the hacker gaining unauthorized access and downloading millions of records from schools worldwide from December 19, 2024, to December 24, 2024. Defendant did not detect the activity until December 28, 2024.

6. To date, PowerSchool has yet to disclose how many individuals have been affected by the Data Breach. In Plaintiff's district alone, PowerSchool failed to properly safeguard the Private Information of approximately more than 50,000 current and former students, and employees combined. PowerSchool is used in numerous school districts across the United States and, as such, there are likely hundreds of thousands, if not millions of victims of this Data Breach.

7. The unauthorized actor accessed and/or downloaded students' Private Information, including names, ID numbers, parent/guardian contact information, dates of enrollment and withdrawal reasons, medical alert information such as allergies and life-threatening conditions, disability information such as individualized education program ("IEP") and 504 plan status, Social Security numbers, and free and reduced lunch status.

8. For employees, the Private Information accessed and/or downloaded included

---

[1] *Bain Capital Completes Acquisition of PowerSchool,* PowerSchool (Oct. 1, 2024), https://www.powerschool.com/bain-capital (last accessed Jan. 13, 2025).

[2] *Id.*

names, ID numbers, their respective departments, employee type, school email addresses, and school phone numbers.

9. In order to obtain PowerSchool's services, students, students' parents, and the employees of Defendant's customers must provide Defendant with highly sensitive Private Information.

10. The data PowerSchool collects far exceeds traditional education records of school-age children, including thousands of person-specific data fields.

11. PowerSchool does not fully disclose what data—or even categories of data—it collects from school-age children or their parents.

12. Due to the nature of the highly sensitive, confidential, and personal Private Information Defendant acquires, collects, maintains, and stores, Defendant had numerous statutory, regulatory, and common law duties to Plaintiff and Class Members to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

13. Defendant disregarded the statutory, regulatory, and common law duties owed to Plaintiff, her minor child, and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Class Members' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate and complete notice of the Data Breach.

14. Defendant was and remains required to maintain the security and privacy of the Private Information it took. When Plaintiff, her minor child, and Class Members provided their Private Information to Defendant, Defendant was required to comply with the obligation to keep Plaintiff's, her minor child's, and Class Members' Private Information secure and safe from unauthorized access, to use this information for business purposes only, and to make only authorized disclosures of this information.

15. Plaintiff, her minor child, and Class Members' Private Information was accessed and/or downloaded by one or more unauthorized actors because Defendant failed to properly

protect the Private Information of Plaintiff., her minor child, and Class Members.

16. Armed with the Private Information accessed in the Data Breach, cybercriminals now have the means to commit a wide range of crimes, leaving Plaintiff, her minor child, and the Class exposed to ongoing and imminent risk of various forms of identity theft. This threat will persist for the foreseeable future, and Plaintiff, her minor child, and the Class will be forced to remain extra vigilant—constantly monitoring their financial accounts and personal data—due to Defendant's failures, in an attempt to prevent further victimization for the rest of their lives.

17. Mitigating that risk requires individuals to devote significant time, money and other resources to closely monitor their credit, financial accounts, health records and email accounts, as well as to take a number of additional prophylactic measures.

18. In this instance, all of that could have been avoided if Defendant had employed reasonable and appropriate data security measures.

19. Moreover, on information and belief, Defendant failed to mount any meaningful investigation into the breach itself, the causes, or what specific information of Plaintiff, her minor child, and the proposed Class was lost to criminals. To date, Defendant has yet to notify Plaintiff of the Data Breach. Plaintiff has only received notice of the Data Breach from the superintendent of her minor child's school district.

20. As a result of the Data Breach, Plaintiff, her minor son, and Class Members suffered concrete injuries in fact including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of their Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

21. Plaintiff seeks to remedy these harms on behalf of all similarly situated individuals whose private information was accessed and/or downloaded from Defendant's network during the Data Breach. Accordingly, Plaintiff brings this class action lawsuit on behalf of herself and her minor child, and a class of individuals whose Private Information was accessed and/or downloaded by cybercriminals due to Defendant's negligent and reckless failures to implement reasonable and up-to-date cybersecurity measures to protect Plaintiff's, her minor child's and Class Members' sensitive Private Information.

## THE PARTIES

22. Plaintiff Gwendolyn Crockran is, and at all times relevant hereto has been, a citizen of the State of Illinois and resides in Cook County.

23. Plaintiff Crockran's minor child is, and at all times relevant hereto has been, a citizen of the State of Illinois and resides in Cook County.

24. Plaintiff received a Notice of Data Breach from the superintendent of her minor child's school district dated January 8, 2025, notifying her that her and her minor child's Private Information had been improperly exposed to unauthorized parties by Defendant between December 19, 2024, and December 24, 2024 (the "Notice of Data Breach").

25. The Notice of Data Breach stated that her and her minor child's Private Information was accessed in the Data Breach:

> **Description of the Data Breach**
> On December 28, 2024, PowerSchool discovered that a threat actor had accessed personal employee and student information from customers worldwide using the PowerSchool Student Information System (PowerSchool SIS). The threat actor exploited the user account of a PowerSchool technical support employee, allowing rapid access to and download of millions of records from schools worldwide between December 19 and December 24, 2024.
>
> PowerSchool offered its first update regarding the data breach to customers through a webinar held at 2 pm this afternoon. Using the instructions provided by PowerSchool, the school district's Technology Services team identified that portions of approximately 53,740 current and former student, and 5,195 employee records were accessed, including information such as:
>
> **Students**
> - Student names and ID numbers

- Parent/guardian contact information
- Dates of enrollment and withdrawal reasons
- Limited medical alert information (e.g., allergies, life-threatening conditions)
- IEP and 504 status
- A limited number of Social Security numbers that were collected between 2005 and 2017
- Free and reduced lunch status

**Employees**

- Employee names and ID numbers
- Department
- Employee type
- School email address
- School phone number

**Next Steps in Response to the Data Breach**
The Technology Services team continues to review data, validate system configurations and assess any additional actions that may be necessary. We are collaborating closely with other impacted school districts and leveraging our membership in both statewide and national educational technology organizations to ensure we have taken every possible step in responding to the data breach.

PowerSchool has provided the next steps it is taking in response to this incident:

- PowerSchool has engaged CrowdStrike, a third-party, cybersecurity firm, to investigate the breach. Their final forensic report is expected to be released at the end of next week and will provide a clearer understanding of the incident and its potential impact.
- PowerSchool has implemented additional information security best practices requiring updated credentials for all employees, and restricting access to their support system tools.

26. Defendant PowerSchool Holdings, Inc. is a citizen of the State of Delaware, with its principal place of business located at 150 Parkshore Dr., Folsom, California 95630. Defendant PowerSchool is an EdTech platform specializing in data collection, storage, and analytics, and serving schools and school districts.

**JURISDICTION & VENUE**

27. This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because this is a class action wherein (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) there are more than 100 members of the proposed class; and (c) there is minimal diversity because Plaintiff (a

citizen of the State of Illinois) and Defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1357.

28. This Court has personal jurisdiction over Defendant because it operates and maintains its principal place of business in this District. Further, Defendant is authorized to and regularly conducts business in this District and makes decisions regarding corporate governance and management of its business operations in this District, including decisions regarding the security of its customers' Private Information.

29. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) through (d) because Defendant operates and maintains its principal place of business in this District and a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### A. Defendant Acquires, Collects, and Maintains, Plaintiff's and Class Members' Private Information.

30. Defendant PowerSchool is an EdTech platform specializing in data collection, storage, and analytics. Defendant offers software and technology-based solutions to schools and school districts. In providing its services, Defendant requires Plaintiff, her minor child, and Class Members to provide their highly sensitive Private Information.

31. Defendant offers a product entitled PowerSchool Student Information System ("PowerSchool SIS").[3] PowerSchool SIS is a K-12 student information system designed to store and manage student data. The product is utilized by students, parents, and employees of schools and school districts.

32. Plaintiff, her minor child, and Class Members are current and former students of Defendant's customers, students' parents, and employees of Defendant's customers.

33. Plaintiff, her minor child, and Class Members live in states with compulsory education laws.

34. Plaintiff, her minor child, and Class Members live in states that entitle residents to

---

[3] *PowerSchool SIS,* PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis (last accessed Jan. 13, 2025).

an education, which would include receiving and using services provided by their educational institutions.

35. In order to receive Defendant's educational and/or employment services within the school setting, students, students' parents, and Defendant's customers employees are required to provide Defendant with highly sensitive personal and health information.

36. Defendant generates, collects, and retains Private Information without the effective consent of Plaintiff, her minor child, and Class Members.

37. This Private Information includes but is not limited to names and ID numbers, parent/guardian contact information, dates of enrollment and withdrawal reasons, medical alert information such as allergies and life-threatening conditions, IEP and 504 status, Social Security numbers, and free and reduced lunch status.

38. Defendant made representations to its customers that they "place great importance and value on the proper handling of personal data that flows within [their] products as [they] provide services to [their] customers."[4] It also claims that the PowerSchool SIS product is "secure by design" and that "your data is always protected with PowerSchool."[5]

39. Defendant further represents that they use "state-of-the-art, and appropriate physical, technical, and administrative security measures to protect the personal data that [they] process"[6] and that they do not "collect, maintain, use or share student personal information beyond that needed for authorized educational or school purposes, or as authorized by the parent or student."[7]

40. Plaintiff, her minor child, and Class Members relied on Defendant's representations, either directly or indirectly through school administrators with whom they have a trusted relationship.

---

[4] *Privacy*, PowerSchool, https://www.powerschool.com/privacy/ (last accessed Jan. 13, 2025).

[5] *PowerSchool SIS,* PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis/ (last accessed Jan. 13, 2025).

[6] *Privacy*, PowerSchool, https://www.powerschool.com/privacy/ (last accessed Jan. 13, 2025).

[7] *Security,* PowerSchool, https://www.powerschool.com/security/ (last accessed Jan. 13, 2025).

41. Students, their parents, and Defendant's customers' employees reasonably and appropriately expect that Defendant will safeguard their highly sensitive Private Information and keep it secure and confidential.

42. Due to the highly sensitive and personal nature of the information Defendant acquires and stores with respect to its customers' clients, Defendant is required to keep customers' clients' and employees' Private Information private; comply with industry standards related to data security and the maintenance of their customers' clients' Private Information; inform their customers' clients of its legal duties relating to data security; comply with all federal and state laws protecting customers' clients' Private Information; only use and release customers' clients' Private Information for reasons that relate to the services it provides; and provide adequate notice to customers' clients if their Private Information is disclosed without authorization

43. Defendant could not perform the services it provides without the required submission of Private Information from Plaintiff, her minor child, and Class Members.

44. Plaintiff, her minor child, and Class Members relied on Defendant to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

45. Upon information and good faith belief, Defendant's actions and inactions directly resulted in the Data Breach and the compromise of Plaintiff's, her minor child's, and Class Members' Private Information.

46. By generating, obtaining, collecting, using, and deriving a benefit from Plaintiff's, her minor child's, and Class Members' Private Information, Defendant assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure. In other words, by generating, collecting and storing this Private Information, Defendant assumed an obligation to protect it.

47. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Defendant was required to keep Plaintiff's, her minor child's, and Class Members' Private Information confidential and securely maintained, to use this

information for business purposes only, and to make only authorized disclosures of this information.

**B. The Data Breach**

48. On or around January 8, 2024, the superintendent of Plaintiff's minor child's school district gave notice to the district's families and staff that there had been a breach within the PowerSchool SIS utilized by the school district.

49. Specifically, on December 28, 2024, PowerSchool discovered that an unauthorized actor had gained access to and downloaded millions of records from schools worldwide by exploiting the user account of a PowerSchool technical support employee. This account allowed the unauthorized actor to gain unfettered "rapid access" to the records between December 19, 2024, and December 24, 2024.

50. To date, PowerSchool has yet to disclose how many individuals have been affected by the Data Breach. In Plaintiff's district alone, PowerSchool failed to properly safeguard the Private Information of more than 50,000 current and former students and employees.

51. The unauthorized actor accessed and/or downloaded students' Private Information, including names, ID numbers, parent/guardian contact information, dates of enrollment and withdrawal reasons, medical alert information such as allergies and life-threatening conditions, disability information such as individualized education program ("IEP") and 504 plan status, Social Security numbers, and free and reduced lunch status.

52. For employees, the Private Information accessed and/or downloaded included names, ID numbers, their respective departments, employee type, school email addresses, and school phone numbers.

53. To date, Plaintiff has yet to receive a notice of data breach directly from Defendant. The Notice of Data Breach Plaintiff received from her son's school district failed to provide basic details such as how the unauthorized actor accessed PowerSchool's networks, whether the data accessed was encrypted or otherwise protected, and how it learned of the Data Breach.

54. The Data Breach occurred because Defendant did not implement adequate and reasonable cyber-security procedures and protocols to protect the Private Information of Plaintiff,

her minor child, and Class Members. Because Defendant's data security protocols and practices were deficient, unauthorized person(s) were able to access, view, and/or exfiltrate Plaintiff's, her minor child's, and Class Members' Private Information.

55. Defendant has engaged a third-party, cybersecurity firm to investigate the breach, requiring Plaintiff and Class Members to wait another week for a final forensic report to reveal the true extent of the Data Breach.

56. To date, these omitted details have not been explained or clarified to Plaintiff, her minor child, or Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

### C. Defendant Had Obligations to Protect Private Information under Federal and State Law and the Applicable Standards of Care

57. Defendant maintains and stores the Private Information of Plaintiff, her minor child, and the Class in the usual course of business.

58. In generating, collecting, maintaining, and storing Private Information, Defendant promises to keep such information confidential and protect it from third parties. Defendant claims that it is "dedicated to protecting your students' data" and that its products are "independently validated by third-party auditors, ensuring your data is always protected with PowerSchool."[8]

59. Defendant also claims to have signed the national Student Privacy Pledge that states: "School service providers take responsibility to both support the effective use of student information and safeguard student privacy and information security."[9]

60. Under the Federal Trade Commission Act ("FTCA") (15 U.S.C. § 45), Defendant was prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has determined that a company's failure to implement reasonable and appropriate data security measures to protect consumers' sensitive personal information constitutes an "unfair practice" in violation of the Act. *See, e.g., FTC v. Wyndham*

---

[8] *PowerSchool SIS,* PowerSchool, https://www.powerschool.com/student-information-cloud/powerschool-sis/ (last accessed Jan. 13, 2025).

[9] *Security,* PowerSchool, https://www.powerschool.com/security/ (last accessed Jan. 13, 2025).

*Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

61. Under the Children's Online Privacy Protection Act ("COPPA") (16 C.F.R. § 312.8), Defendant was required to "establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children" under 13.

62. Defendant is also required by various state laws and regulations to protect Plaintiff's, her minor child's, and Class Members' Private Information.

63. In addition to its obligations under federal and state laws, Defendant had a duty to Plaintiff, her minor child, and Class Members whose Private Information Defendant took. This duty required Defendant to exercise reasonable care in acquiring, retaining, securing, safeguarding, deleting, and protecting that information from compromise, loss, theft, unauthorized access, or misuse. Defendant owed Plaintiff, her minor child, and Class Members an obligation to provide reasonable security measures, in line with industry standards and regulatory requirements, ensuring that its computer systems, networks, and personnel responsible for them adequately protected the Private Information of Plaintiff and the Class Members from unauthorized exposure.

64. Defendant owed a duty to Plaintiff, her minor child, and the Class Members, whose Private Information Defendant took, to design, maintain, and regularly test its computer and email systems to ensure that the Private Information in its possession was adequately secured and protected from unauthorized access or compromise.

65. Defendant owed a duty to Plaintiff, her minor child, and the Class Members, whose Private Information Defendant took, to establish and enforce reasonable data security practices and procedures to protect that information. This duty included properly training its employees and others with access to Private Information within its computer systems on how to securely handle and protect such data.

66. Defendant owed a duty to Plaintiff, her minor child, and the Class Members, whose Private Information Defendant took, to maintain, update and otherwise ensure the security of PowerSchool SIS.

67. Defendant owed a duty to Plaintiff, her minor child, and the Class Members, whose Private Information Defendant took, to implement processes capable of detecting, investigating

and thwarting a breach in its data security systems in a timely manner.

68. Defendant owed a duty to Plaintiff, her minor child, and the Class Members, whose Private Information Defendant took, to disclose if its computer systems and data security practices were inadequate to protect individuals' Private Information from theft. Such an inadequacy would constitute a material fact in the decision to provide personal information to Defendant.

69. Defendant owed a duty to Plaintiff, her minor child, and the Class Members, whose Private Information Defendant took, to promptly and accurately disclose any data breaches that occurred.

70. Defendant owed a duty of care to Plaintiff, her minor child, and the Class Members, as they were foreseeable and likely victims of any deficiencies in Defendant's data security practices.

**D. The Data Breach Was Foreseeable to Defendant and Preventable**

71. Despite the growing body of publicly available information regarding the rise of ransomware attacks and other forms of cyberattacks that compromise Private Information, Defendant's approach to maintaining the privacy of Plaintiff's, her minor child's, and Class Members' Private Information was inadequate, unreasonable, negligent, and reckless.

72. The Data Breach was clearly foreseeable to Defendant. The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities.

73. Schools and school districts have been particularly and increasingly targeted by cybercriminals in recent years, which has resulted in leaks of highly personal and sensitive information about children, some of which perpetrators have made publicly available.

74. From 2016 to 2022, there were over 1,600 publicly disclosed cyberattacks on K-12 schools specifically, resulting in significant monetary losses to school districts ranging from $50,000 to $1 million per school data breach.[10]

---

[10] Juan H., *The biggest school data breaches of 2023,* Prey Project Blog (May 27, 2024) https://preyproject.com/blog/school-data-breaches-in-2023 (last accessed Jan. 13, 2025).

75. The Data Breach was also clearly foreseeable to Defendant because Defendant was well aware that the Private Information it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

76. Indeed, PowerSchool recently disclosed to shareholders that a "risk factor" was "the impact of potential information technology or data security breaches or other cyber-attacks or other disruptions[.]"[11] It admitted that "the techniques used by computer hackers and cyber criminals to obtain unauthorized access to data or to sabotage computer systems change frequently and generally are not detected until after an incident has occurred."[12]

77. Medical information, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.[13] Social Security numbers are among the most damaging types of Private Information to be stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change, as discussed below.

78. Furthermore, minor children are particularly vulnerable targets to identity theft because they are "often a blank slate for fraudsters who can apply for credit and take out loans in their name."[14] The risk to minors is substantial given their age and lack of established credit.

79. Such exposure can have immediate and long-term consequences for children. As explained by one cybersecurity professional whose son's school was hacked in an unrelated incident, "It's your future. It's getting into college, getting a job. It's everything."[15] And as

---

[11] Form 10-K, PowerSchool's 2023 United States Securities and Exchange Commission Report, https://s27.q4cdn.com/190453437/files/doc_financials/2023/q4/e46cee20-6b81-44d3-8885-dfccd31cd637.pdf (last accessed Jan. 13, 2025).

[12] *Id.*

[13] Brian O'Connor, *Healthcare Data Breach: What to Know About them and What to Do After One*, Experian (March 31, 2023), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed Jan. 13, 2025).

[14] *Are My Children at Risk of Identity Theft?*, Equifax, https://www.equifax.com/personal/education/identity-theft/articles/-/learn/child-identity-theft (last accessed Jan. 13, 2025).

[15] Natasha Singer, *A Cyberattack Illuminates the Shaky State of Student Privacy*, The New York

PowerSchool itself has observed, such breaches:

> could result in the loss or misuse of proprietary and confidential school, student (including prospective student), employee, and company information, or harm the safety, wellbeing, or academic outcomes of students, all of which could subject us to significant liability, or interrupt our business, potentially over an extended period of time. For example, data breaches or failures could result in a student's grades being misreported on that student's transcripts, which could negatively affect students' emotional health and educational and career prospects.[16]

80. In 2022 alone, approximately 1.7 million minor children were victims of a data breach.[17]

81. To mitigate the heightened risk of ransomware attacks and other data breaches, including the incident that led to the Data Breach, Defendant could and should have implemented the following preventive measures, as recommended by the United States Government:

- **Implement an awareness and training program:** Educate employees and individuals about the threat of ransomware and how it is delivered, as end users are often the primary targets.
- **Enable strong spam filters:** Prevent phishing emails from reaching end users by using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to block email spoofing.
- **Scan all incoming and outgoing emails:** Detect threats by scanning emails and filtering executable files to prevent them from reaching end users.
- **Configure firewalls:** Block access to known malicious IP addresses to prevent unauthorized access.
- **Patch operating systems, software, and firmware:** Regularly update and patch devices, potentially using a centralized patch management system for greater efficiency.

---

Times (July 31, 2022), https://www.nytimes.com/2022/07/31/business/student-privacy-illuminate-hack.html (last accessed Jan. 13, 2025).

[16] Form 10-K, PowerSchool's 2023 United States Securities and Exchange Commission Report, https://s27.q4cdn.com/190453437/files/doc_financials/2023/q4/e46cee20-6b81-44d3-8885-dfccd31cd637.pdf (last accessed Jan. 13, 2025).

[17] *Protecting Our Kids Data Privacy is Paramount,* Stay Safe Online (Jan. 25, 2024), https://www.staysafeonline.org/articles/protecting-our-kids-data-privacy-is-paramount (last visited Jan. 13, 2025).

- **Set anti-virus and anti-malware programs for regular scans:** Ensure these programs run automatic scans to detect and remove potential threats.

- **Manage privileged accounts based on the principle of least privilege:** Limit administrative access to users only when absolutely necessary, and ensure those with admin privileges use them only when required. Implement an awareness and training program.

- **Configure access controls:** Implement least privilege principles for file, directory, and network share permissions. Users should only have access to what they need—if a user only needs to read specific files, they should not have write access to those files, directories, or shares.

- **Disable macro scripts in office files transmitted via email:** Prevent the execution of potentially harmful macros by disabling them in office files sent via email. Consider using Office Viewer software instead of full office suite applications to open email attachments.

- **Implement Software Restriction Policies (SRP):** Use SRPs or similar controls to prevent programs from executing from common ransomware locations, such as temporary folders associated with web browsers or compression programs, including the AppData/LocalAppData folder.

- **Disable Remote Desktop Protocol (RDP):** If RDP is not in use, consider disabling it to reduce potential attack vectors.

- **Use application whitelisting:** Allow only programs that are explicitly permitted by security policy to execute, blocking any unauthorized or potentially malicious software.

- **Execute operating system environments or specific programs in a virtualized environment:** Run sensitive systems or programs in isolated virtual environments to reduce risk.

- **Categorize data based on organizational value:** Implement physical and logical separation of networks and data for different organizational units to protect critical information and ensure appropriate access control.[18]

82. To mitigate the heightened risk of ransomware attacks and other data breaches, including the incident that led to the Data Breach, Defendant could and should have implemented the following preventive measures, as recommended by Microsoft's 2023 Digital Defense Report:

---

[18] *How to Protect Your Networks from Ransomware: Technical Guidance Document,* United States Department of Justice, https://www.justice.gov/criminal/criminal-ccips/file/872771 (last accessed Jan. 13, 2025).

- **Enable multifactor authentication (MFA)**. This protects against compromised user passwords and helps to provide extra resilience for identifies.

- **Apply Zero Trust principles.** This includes ensuring users and devices are in a good state before allowing access to resources, allowing only the privilege that is needed for access to a resource and no more, assuming system defenses have been breached and systems may be compromised.

- **Use extended detection and response (XDR) and antimalware**. Implement software to detect and automatically block attacks and provide insights into the security operations software.

- **Keep up to date**. Unpatched out-of-date systems are a key reason many organizations fall victim to cyber-attacks.

- **Protect data**. Knowing your important data, where it is located, and whether the right defenses are implemented is crucial to implementing the appropriate protection.[19]

83. To mitigate the heightened risk of ransomware attacks and other data breaches, including the incident that led to the Data Breach, Defendant could and should have implemented the following preventive measures, as recommended by the FTC in its latest update to *Protecting Personal Information: A Guide for Business*:

- Know what personal information you have in your files and on your computers.

- Keep only what you need for your business.

- Protect the information that you keep.

- Properly dispose of information you no longer need.

- Create a plan to respond to security incidents.[20]

84. To mitigate the heightened risk of ransomware attacks and other data breaches, including the incident that led to the Data Breach, Defendant could and should have implemented the following preventive measures, as recommended by the Joint Ransomware Task Force's

---

[19] *Microsoft Digital Defense Report 2023*, Microsoft https://www.microsoft.com/en-us/security/security-insider/microsoft-digital-defense-report-2023 (last accessed Jan. 13, 2025).

[20] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed Jan. 13, 2025).

("JRTF") #StopRansomware Guide, although this list does not encompass the full range of recommended actions:

- **Conduct regular vulnerability scanning to identify and address vulnerabilities**, especially those on internet-facing devices, to limit the attack surface.

- **Regularly patch and update software and operating systems to the latest available versions.** Prioritize timely patching of internet-facing servers-that operate software for processing internet data such as web browsers, browser plugins, and document readers-especially for known exploited vulnerabilities….

- **Limit the use of RDP and other remote desktop services.** If RDP is necessary, apply best practices. Threat actors often gain initial access to a network through exposed and poorly secured remote services, and later traverse the network using the native Windows RDP client.

- **Ensure all on-premises, cloud services, mobile, and personal devices are properly configured, and security features are enabled**. For example, disable ports and protocols that are not being used for business purposes.[21]

85. Given that Defendant took Private Information from Plaintiff, her minor child, and the Class Members, Defendant should and could have taken the above measures to ensure that the Private Information generated and collected was safe from unauthorized actors.

86. The occurrence of the Data Breach indicates that Defendant failed to implement one or more of the above measures to prevent ransomware attacks. The failure to implement some or all of the above measures resulted in the Data Breach and the exposure of Plaintiff's, her minor child's, and Class Members' Private Information.

**E. Defendant Failed to Comply with FTC Guidelines.**

87. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

88. For example, in 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses.

---

[21] *#StopRansomware Guide*, Cybersecurity and Infrastructure Security Agency (CISA), https://www.cisa.gov/resources-tools/resources/stopransomware-guide (last accessed Jan. 13, 2025).

These guidelines advise businesses, *inter alia,* to protect the personal consumer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[22]

89. The guidelines further advise businesses: not to maintain PII longer than necessary for authorization of a transaction; to limit access to sensitive data; to use an intrusion detection system to expose a breach as soon as it occurs; to monitor all incoming traffic for activity indicating someone is attempting to hack the system; to watch for large amounts of data being transmitted from the system; and to verify that third-party service providers have implemented reasonable security measures.[23]

90. To underscore the binding significance and legal ramifications of the promulgated guidance, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.[24] Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

91. Section 5 of the FTCA, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duties in this regard.

92. Defendant failed to properly implement basic data security practices, despite the

---

[22] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Jan. 13, 2025).

[23] *Id.*

[24] *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015) (determining that a company's failure to implement reasonable and appropriate data security measures to protect consumers' sensitive personal information constitutes an "unfair practice" in violation of the Act).

amount, value, and sensitivity of the data it possessed.

93. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's, her minor child's and Class Members' Private Information, or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

94. Upon information and belief, Defendant was at all times fully aware of its obligations to protect the Private Information of Plaintiff, her minor child, and Class Members, Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it generated, obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff, her minor child, and the Class.

**F. Defendant Violated Industry Standards.**

95. Experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

96. In light of the evident threat of cyberattacks seeking Private Information from K-12 schools, several best practices have been identified by regulatory agencies and experts that, at a minimum, should be implemented by entities who are in possession of individuals' Private Information, including but not limited to: educating and training all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data; monitoring and limiting network ports; and protecting web browsers and email management systems. Defendant failed to follow these industry best practices, despite publicly acknowledging their importance.[25]

97. Defendant failed to meet the minimum standards of any of the following

---

[25] *Student Data Privacy: Everything You Need to Know*, PowerSchool (June 20, 2023) https://www.powerschool.com/blog/student-data-privacy-everything-you-need-to-know/ (last accessed Jan. 13, 2025).

frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

98. These foregoing frameworks are existing and applicable industry standards for large companies, and upon information and belief, Defendant failed to comply with these accepted standards, thereby opening the door to the threat actor and causing the Data Breach

99. Moreover, the cybercriminal who accessed PowerSchool used an IP address from Ukraine. Had PowerSchool taken the industry standard step of blocking non-US IP addresses from accessing U.S. instances, the Data Breach affecting Plaintiff, her minor child, and Class Members could have been prevented.

### G. Plaintiff's, her Minor Child's, and Class Members' Private Information Has Significant Value.

100. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[26]

101. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[27]

---

[26] 17 C.F.R. § 248.201 (2013).

[27] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019) https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 13, 2025).

102. The Private Information of minor children is particularly valuable to criminals because they are "often a blank slate for fraudsters who can apply for credit and take out loans in their name."[28]

103. PowerSchool itself has observed that "the value of a student record on the black market is $250 to $350."[29]

104. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information at the point-of-sale in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

105. Take, for example, Social Security numbers, which are among the most damaging types of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration has stressed that the theft or loss of an individual's Social Security number, as occurred here, can lead to identity theft and extensive financial fraud:

> Identity theft is one of the fastest growing crimes in America. Scammers use your Social Security (SSN) to get other personal information about you. They can use your SSN and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your SSN until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.[30]

106. Moreover, the process of replacing a Social Security Number is time-consuming and difficult. According to the Social Security Administration, if your Social Security Number is

---

[28] *Are My Children at Risk of Identity Theft?*, Equifax, https://www.equifax.com/personal/education/identity-theft/articles/-/learn/child-identity-theft (last accessed Jan. 13, 2025).

[29] *Student Data Privacy: Everything You Need to Know* PowerSchool (June 20, 2023) https://www.powerschool.com/blog/student-data-privacy-everything-you-need-to-know/ (last accessed Jan. 13, 2025).

[30] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Jan. 13, 2025).

lost or stolen, but there's no evidence of misuse, you cannot obtain a new number.[31] This leaves victims in a precarious situation, essentially forced to wait for fraud to occur before they can take action to mitigate the damage. This delay in being able to change a compromised Social Security Number puts victims at continued risk for identity theft, financial fraud, and other forms of exploitation, making it much harder to protect themselves in the aftermath of a data breach.

107. Among other forms of fraud, identity thieves may use Social Security Numbers to obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

108. The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a lag in time between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[32]

109. At all relevant times, Defendant knew or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff, her minor child, and Class Members, including Social Security Numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiff, her minor child, and Class Members as a result of a breach.

110. Plaintiff, her minor child, and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring, and will continue to incur, such damages in addition to any fraudulent use of their Private

---

[31] *Id.*

[32] *Report to Congressional Requesters,* GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last accessed Jan. 13, 2025).

Information.

111. Defendant was, or should have been, fully aware of the unique types and the significant volume of data on its server(s) and thus the significant number of individuals who would be harmed by the compromised data.

112. According to the FTC, identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[33] Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[34]

113. The physical, emotional, and social toll suffered (in addition to the financial toll) by identity theft victims cannot be overstated.[35] "A 2016 Identity Theft Resource Center survey of identity theft victims sheds light on the prevalence of this emotional suffering caused by identity theft: 74 percent of respondents reported feeling stressed[,] 69 percent reported feelings of fear related to personal financial safety[,] 60 percent reported anxiety[,] 42 percent reported fearing for the financial security of family members[, and] 8 percent reported feeling suicidal."[36]

114. In addition to Social Security Numbers, unauthorized access to an individual's medical records can have serious consequences. Unlike credit or debit card information, which can be quickly replaced or canceled, stolen medical records can be stored for long periods, with

---

[33] *See Taking Charge, What To Do If Your Identity Is Stolen*, FTC, 3 https://www.justice.gov/usao-wdmi/file/764151/dl?inline (last accessed Jan. 13, 2025).

[34] *See Id.* The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. §603.2(a). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 16 C.F.R. §603.2(b).

[35] *See* Alison Grace Johansen, *4 Lasting Effects of Identity Theft,* NortonLifeLock (Feb. 4, 2021), https://lifelock.norton.com/learn/identity-theft-resources/lasting-effects-of-identity-theft?srsltid=AfmBOorWguVbuVLpKXO6-0gKBs87unsFhintKF98izq0DAv1Xpve5WAX (last accessed Jan. 13, 2025).

[36] *Id.*

individuals often remaining unaware that their records have been compromised or stolen.[37] Moreover, the monetary value of medical records on the dark web far exceeds that of credit card numbers. For example, the cybersecurity firm Trustwave discovered that medical records can fetch up to $250 per record on the dark web, while credit card numbers typically sell for around $5 each.[38]

115. Medical records are highly valuable to cybercriminals, not only because of the price for which they can be sold on the dark web, but also due to the various ways they can be exploited. Cybercriminals can use stolen medical records to commit medical identity theft to submit fraudulent medical claims, purchase prescriptions, or receive unauthorized treatment. These actions pose significant threats and risks to patients whose medical information has been compromised, leading to potential financial, physical, and emotional harm.

116. According to the FTC, if a hacker or an individual to whom the hacker sells your medical information mixes it with your own, it could impact the medical care you receive, or the health insurance benefits available to you. The FTC's Medical Identity Theft Frequently Asked Questions highlight several red flags victims should watch for, including: (i) receiving bills for medical services they didn't receive, (ii) being contacted by debt collectors about medical debt they don't owe, (iii) seeing unrecognized medical collection notices on their credit report, (iv) spotting incorrect office visits or treatments on their explanation of benefits, (v) being informed by their health plan that they've reached their benefits limit, or (vi) being denied insurance because their medical records reflect a condition they do not have.

117. These statistics highlight that the impact of identity theft extends far beyond financial harm—it profoundly affects individuals' physical well-being, mental health, and social relationships. This underscores just how critical it is to protect Private Information, as the

---

[37] *The Value of Protected Health Information (PHI) To Hackers: Understanding the Risks and Implications,* ifax, https://www.ifaxapp.com/hipaa/phi-hackers-risks-implications/ (last accessed Jan. 13, 2025).

[38] *Trustwave Global Security Report (2018)*, Trustwave, https://trustwave.azureedge.net/media/15350/2018-trustwave-global-security-report-prt.pdf?rnd=131992184400000000 (last accessed Jan. 13, 2025).

consequences of its misuse ripple through every aspect of an affected person's life.

**H. Plaintiff, her Minor Child, & Class Members Have Suffered Compensable Damages.**

118. The ramifications of Defendant's failure to safeguard the Private Information of Plaintiff, her minor child, and Class Members are long-lasting and severe. In 2023 alone, American adults lost $43 billion to identity theft.[39] Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

119. As a result of the Data Breach, Plaintiff's, her minor child's, and Class Members' Private Information have diminished in value.

120. The Private Information belonging to Plaintiff, her minor child, and Class Members is private in nature and was left inadequately protected by Defendant who did not obtain Plaintiff's or Class Members' consent to disclose such Private Information to any other person as required by applicable law and industry standard.

121. The Data Breach was a direct and proximate result of Defendant's failure to: (a) properly safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's, her minor child's, and Class Members' Private Information; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

122. Defendant had the resources necessary to prevent the Data Breach—particularly after its recent $5.6 billion acquisition by Bain Capital—but neglected to adequately implement proper data security measures, despite its obligation to protect the Private Information.

123. Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have prevented the intrusions into its systems and, ultimately, the theft of Plaintiff's, her minor child's, and Class Members' Private

---

[39] *Identity Fraud Cost Americans $43 Billion in 2023,* AARP, https://www.aarp.org/money/scams-fraud/info-2024/identity-fraud-report.html (last accessed Jan. 13, 2025).

Information.

124. As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiff, her minor child, and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives.

125. Defendant's failure to adequately protect Plaintiff's, her minor child's, and Class Members' Private Information has resulted in Plaintiff, her minor child, and the Class Members having to undertake these tasks which require extensive amounts of time, calls and, for many of the credit and fraud protection services.

126. As a result of Defendant's failures to prevent the Data Breach, Plaintiff, her minor child, and Class Members have suffered, will suffer, and are at an increased risk of suffering:

a. The compromise, publication, theft and/or unauthorized use of their Private Information;

b. Unauthorized use and misuse of their Private Information;

c. The loss of the opportunity to control how their Private Information is used;

d. Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

f. The imminent and certain impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. The continued risk to their Private Information that is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private

Information in its possession;

h. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff, her minor child, and Class Members.

i. Lost or diminished educational prospects and opportunities;

j. Lost or diminished career prospects and opportunities; and

k. Emotional distress resulting from the foregoing.

127. In addition to a remedy for economic harm, Plaintiff, her minor child, and the Class Members maintain an undeniable interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

**REPRESENTATIVE PLAINTIFF'S EXPERIENCE**

128. Plaintiff Gwendolyn Crockran's child is a minor and a student within an Illinois school district that utilized PowerSchool SIS.

129. Plaintiff was required to provide her child's Private Information to Defendant in order to receive Defendant's services. Plaintiff and her child were required to provide their Private Information to Defendant in order to attend school in his school district, including names, dates of birth, contact information, Social Security number, medical information, and more. Plaintiff did not provide effective consent to Defendant taking her or her minor child's Private Information.

130. Plaintiff received a letter from the superintendent of her child's school district, dated January 8, 2025, informing her that her own contact information and her child's name, ID number, dates of enrollment and withdrawal reasons, medical alert information, IEP and 504 status, Social Security number, and whether he received free or reduced lunch at school had been disclosed to an unauthorized actor as a result of the Data Breach.

131. Plaintiff is still awaiting formal and direct notice from Defendant detailing exactly how her and her son's Private Information has been compromised. Upon information and belief, her minor child's Social Security number, among other data points, was compromised.

132. Because the Data Breach was an intentional attack by cybercriminals seeking valuable information that they could exploit, Plaintiff and her child remain at critical risk of severe

identity theft and exploitation.

133. Plaintiff and her child are very careful about not sharing their sensitive Private Information. They have never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

134. Plaintiff and her child take great care to store any documents containing their personal information in secure locations or to properly dispose of such documents. They also exercise caution by selecting unique usernames and strong passwords for their online accounts to protect their privacy and security.

135. Plaintiff suffered actual injury from having her and her minor child's Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

136. Plaintiff will be taking steps to secure both her and her child's Private Information and implementing freezes on their credit with national credit reporting agencies.

137. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence. This fear, anxiety, and stress has been further multiplied by Plaintiff's serious concern for her minor child and the impact on his credit and life—including education and career prospects—before he has even reached adulthood.

138. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach for her

and her minor child.

139. As a result of the Data Breach, Plaintiff and her minor child are at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

140. Plaintiff and her minor child have a continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

141. Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff seeks to bring this class action on behalf of herself, her minor child, and a class (the "Class") defined as follows:

> **All persons and/or entities in the United States whose Private Information was compromised in the Defendant's Data Breach which occurred in or about December 2024.**

142. Excluded from the Class are Defendant and its officers, directors and employees, any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

143. Plaintiff reserves the right to modify and/or amend the Class, including but not limited to, creating additional subclasses as necessary.

144. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

145. ***Numerosity.*** Consistent with Fed. R. Civ. P. 23(a)(l), the Class is so numerous that joinder of all members is impracticable. In Plaintiff's minor child's school district alone, there are in excess of 50,000 members of the Class. The exact size of the Class and the identities of Class Members are readily ascertainable in or through Defendant's records.

146. ***Commonality and Predominance.*** Consistent with Fed. R. Civ. P. 23(a)(2) and

(b)(3), this action involves common questions of law and fact that predominate over any questions that may affect only individual Class Members. Such common questions include:

a. Whether Defendant failed to timely notify Plaintiff, her minor child and Class Members of the Data Breach;

b. Whether Defendant had a duty to protect the Private Information of Plaintiff, her minor child and Class Members;

c. Whether Defendant had respective duties not to disclose the Private Information of Plaintiff, her minor child and Class Members to unauthorized third parties;

d. Whether Defendant had respective duties not to disclose the Private Information of Plaintiff, her minor child and Class Members for non-business purposes;

e. Whether Defendant failed to adequately safeguard the Private Information of Plaintiff, her minor child and Class Members;

f. Whether and when Defendant actually learned of the Data Breach;

g. Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached its duties thereby;

h. Whether Defendant adequately, promptly, and accurately informed Plaintiff, her minor child and Class Members that their Private Information had been compromised;

i. Whether Defendant violated the law by failing to promptly notify Plaintiff, her minor child and Class Members that their Private Information had been compromised;

j. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

k. Whether Defendant adequately addressed and fixed the vulnerabilities that allowed the Data Breach to occur;

l. Whether Defendant was negligent and that negligence resulted in the Data Breach;

m. Whether Defendant was unjustly enriched;

n. Whether Plaintiff, her minor child and Class Members are entitled to actual, statutory, and/or nominal damages as a result of Defendant's wrongful conduct; and

o. Whether Plaintiff, her minor child and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

147. ***Typicality.*** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's and her minor child's claims are typical of the claims of other Class Members in that Plaintiff and her minor child, like all Class Members, had her personal data compromised, breached, and stolen in the Data Breach. Plaintiff, her minor child, and all Class Members were injured through the misconduct of Defendant and assert the same claims for relief.

148. ***Adequacy.*** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff and her counsel will fairly and adequately protect the interests of the Class. Plaintiff and her minor child are members of the Class she seeks to represent; is committed to pursuing this matter against Defendant to obtain relief for the Class; and has no interests that are antagonistic to, or in conflict with, the interests of other Class Members. Plaintiff retained counsel who are competent and experienced in litigating class actions and complex litigation, including data breach litigation of this kind. Plaintiff and her counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

149. ***Superiority.*** Consistent with Fed. R. Civ. P. 23(6)(3), a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Plaintiff, her minor child, and Class Members have been harmed by Defendant's wrongful conduct and/or action. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct

and/or inaction. Plaintiff knows of no difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

150. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the common questions of law or fact predominate over any questions affecting Plaintiff or any individual Class Members, a class action is superior to other available methods for the fair and efficient adjudication of this controversy, and the requirements of Rule 23(a) are met.

151. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(l) because the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. By contrast, conducting this litigation as a class action conserves judicial resources and the parties' resources and protects the rights of each Class Member. Specifically, injunctive relief could be entered in multiple cases, but the ordered relief may vary, causing Defendant to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which to comply. Class action status is also warranted because prosecution of separate actions by Class Members would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

152. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant, through its uniform conduct, acted or failed and refused to act on grounds generally applicable to Plaintiff and the Class as a whole, making injunctive and declaratory relief appropriate to Plaintiff and the Class as a whole. Moreover, Defendant continues to maintain its inadequate security practices, retain possession of Plaintiff's, her minor child's, and Class Members' Private Information, and has not been forced to change its practices or to relinquish Private Information by nature of other civil suits or government enforcement actions, thus making injunctive relief a live issue and appropriate to the Class as a whole.

153. Particular issues are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the claims present discrete common issues, the resolution of which would materially

advance the resolution of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. whether Plaintiff's, her minor child's and Class Members' Private Information was accessed, compromised, or stolen in the Data Breach;

b. whether Defendant owed a legal duty to Plaintiff, her minor child and Class Members;

c. whether Defendant failed to take adequate and reasonable steps to safeguard the Private Information of Plaintiff, her minor child and Class Members;

d. whether Defendant failed to adequately monitor its data security systems;

e. whether Defendant failed to comply with applicable laws, regulations, and industry standards relating to data security;

f. whether Defendant knew or should have known that it did not employ adequate and reasonable measures to keep Plaintiff's, her minor child's and Class Members' Private Information secure; and

g. whether Defendant's adherence to FTC data security obligations, industry standards, and measures recommended by data security experts would have reasonably prevented the Data Breach.

**<u>CAUSES OF ACTION</u>**

**<u>COUNT ONE</u>**
**Negligence**
**(On behalf of Plaintiff & the Class)**

154. Plaintiff repeats and re-alleges and incorporates by reference herein all of the allegations above as if fully set forth herein.

155. Plaintiff brings this claim individually and on behalf of the Class.

156. Defendant owed a duty under common law to Plaintiff, her minor child and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

157. Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

158. Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff, her minor child and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

159. Defendant's duty also arose from Defendant's position as a provider of educational support services. Defendant holds itself out as trusted provider of educational support services, and thereby assumes a duty to reasonably protect Plaintiff's, her minor child's and Class Members' information. Indeed, Defendant was in a unique and superior position to protect against the harm suffered by Plaintiff, her minor child and Class Members as a result of the Data Breach.

160. Defendant breached the duties owed to Plaintiff, her minor child and Class Members and thus was negligent. As a result of a successful attack directed towards Defendant that compromised Plaintiff's, her minor child's and Class Members' Private Information, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of Plaintiff's, her minor child's and Class Members' information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to Plaintiff, her minor child and Class Members; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive Private Information.

161. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff, her minor child and Class Members, their Private Information would not have been compromised.

162. As a direct and proximate result of Defendant's negligence, Plaintiff, her minor child and Class Members have suffered injuries, including:

a. Theft of their Private Information;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c. Costs associated with purchasing credit monitoring and identity theft protection services;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and/or imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information that Defendant took, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's, her minor child's, and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's, her minor child's and Class Members' data;

i. Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff, her minor child and Class Members;

j. The diminished value of the services they paid for and received, and

k. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff, her minor child and Class Members.

163. As a direct and proximate result of Defendant's negligence, Plaintiff, her minor child and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT II**
**Breach of Fiduciary Duty**
**(On behalf of Plaintiff & the Class)**

164. Plaintiff repeats and re-alleges and incorporates by reference herein all of the allegations above as if fully set forth herein.

165. Plaintiff brings this claim individually and on behalf of the Class.

166. Given the relationship between Defendant and Plaintiff, her minor child and Class Members, where Defendant became guardian of Plaintiff's, her minor child's and Class members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff, her minor child and Class Members, (1) for the safeguarding of Plaintiff, her minor child and Class Members' Private Information; (2) to timely notify Plaintiff, her minor child and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

167. Defendant has a fiduciary duty to act for the benefit of Plaintiff, her minor child and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their Private Information.

168. Because of the highly sensitive nature of the Private Information, Plaintiff, her minor child and Class Members (or their third-party agents)—had they provided effective consent to Defendant taking their Private Information, which they did not—would not have entrusted Defendant, or anyone in Defendant's position, to retain their Private Information had they known the reality of Defendant's inadequate data security practices.

169. Defendant breached its fiduciary duties to Plaintiff, her minor child and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's, her minor child's, and Class Members' Private Information.

170. Defendant also breached its fiduciary duties to Plaintiff, her minor child and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

171. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff, her minor child and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**<u>COUNT III</u>**
**Invasion of Privacy**
**(On behalf of Plaintiff & the Class)**

172. Plaintiff repeats and re-alleges and incorporates by reference herein all of the allegations above as if fully set forth herein.

173. Plaintiff brings this claim individually and on behalf of the Class.

174. Plaintiff, her minor child, and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

175. Defendant owed a duty to its current and former users, including Plaintiff, her minor child and the Class, to keep this information confidential.

176. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's, her minor child's and Class Members' Private Information is highly offensive to a reasonable person.

177. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff, her minor child and the Class (or their third-party agents) were required to disclose their

sensitive and confidential information to Defendant, but did so privately, with the belief that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff, her minor child and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

178. The Data Breach constitutes an intentional interference with Plaintiff's, her minor child's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

179. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

180. Defendant acted with a knowing state of mind when it failed to notify Plaintiff, her minor child and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

181. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff, her minor child and the Class.

182. As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff, her minor child and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff, her minor child and the Class to suffer damages (as detailed *supra*).

183. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff, her minor child and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

184. Plaintiff, her minor child and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff, her minor child and the Class.

185. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their

credit history for identity theft and fraud, plus prejudgment interest and costs.

**COUNT IV**
**Declaratory Judgment and Injunctive Relief**
**(On behalf of Plaintiff & the Class)**

186. Plaintiff repeats and re-alleges and incorporates by reference herein all of the allegations above as if fully set forth herein.

187. Plaintiff brings this claim individually and on behalf of the Class.

188. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

189. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's, her minor child's and Class Members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff's, her minor child's and Class Members from further data breaches that compromise their Private Information. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and her minor child continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

190. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure users' Private Information and to timely notify users of a data breach under the common law, Section 5 of the FTC Act; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure students', parents' and employees' Private Information.

191. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to

protect users' Private Information.

192. If an injunction is not issued, Plaintiff and her minor child will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant's properties.

193. The risk of another such breach is real, immediate and substantial.

194. If another breach of Defendant's store of student, parent, and employee data occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

195. The hardship to Plaintiff and her minor child if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff and her minor child will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

196. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendant's, thus eliminating the additional injuries that would result to Plaintiff, her minor child and Class Members whose confidential information would be further compromised.

## COUNT V
## Unjust Enrichment
## (On behalf of Plaintiff & the Class)

197. Plaintiff repeats and re-alleges and incorporates by reference herein all of the allegations above as if fully set forth herein.

198. Plaintiff brings this claim individually and on behalf of the Class.

199. Upon information and belief, Defendant funded its data security measures from its general revenue including payments made by its customers for use by Plaintiff, her minor child and Class Members, as well as by revenue generated from its data-sharing agreements, including data belonging to Plaintiff, her minor child, and Class Members.

200. As such, a portion of the payments made directly or indirectly on behalf of Plaintiff, her minor child and the Class Members is to be used to provide a reasonable level of data security,

and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

201. Plaintiff, her minor child and Class Members conferred a monetary benefit on Defendant. Specifically, they provided their data to Defendant, including Private Information, which Defendant uses for highly profitable commercial purposes.

202. In exchange, Plaintiff, her minor child and Class Members received only education services to which they were already legally entitled.

203. Defendant knew that Plaintiff, her minor child and Class Members conferred a benefit that Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff, her minor child and Class Members for business purposes.

204. In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's, her minor child's and Class Members Private Information. Instead of providing a reasonable level of data security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits and the expense of Plaintiff, her minor child and Class Members by utilizing cheaper, ineffective data security measures.

205. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff, her minor child and Class Members because Defendant failed to implement appropriate data management and security measures that are mandated by their common law and statutory duties.

206. Defendant failed to secure Plaintiff, her minor child and Class Members' Private Information and, for that and other reasons, did not provide full compensation for the benefit Plaintiff, her minor child and Class Members conferred upon Defendant.

207. Defendant acquired Plaintiff's, her minor child's and Class Members' Private Information through unlawful means in that it generated and extracted such information without effective consent.

208. Defendant acquired Plaintiff's, her minor child's and Class Members' Private Information through inequitable means in that it failed to disclose the inadequate security practices

previously alleged.

209. Plaintiff, her minor child and Class Members have no adequate remedy at law.

210. As a direct and proximate result of Defendant's conduct, Plaintiff, her minor child and Class Members have suffered injuries, including:

a. Theft of their Private Information;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

c. Costs associated with purchasing credit monitoring and identity theft protection services;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's, her minor child's and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's, her minor child's and Class Members' data;

i. Future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the lives of Plaintiff, her minor child and Class Members; and

j. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff, her minor child and Class Members.

211. As a direct and proximate result of Defendant's conduct, Plaintiff, her minor child and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

212. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff, her minor child and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts overpaid, directly or indirectly on behalf of Plaintiff, her minor child and Class Members, for Defendant's services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, her minor child, and other Class Members, prays for judgment against Defendant as follows:

A. That the Court certify this case as a class action and certify the Class as proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B. That Plaintiff and the Class be granted the declaratory and injunctive relief sought herein;

C. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, punitive damages,

attorneys' fees, expenses, costs, and such other and further relief as it just and proper in an amount to be determined at trial;

D. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of its unlawful acts, omissions, and practices;

E. That the Court award pre- and post-judgment interest at the maximum legal rate; and

F. That the Court grant all such other relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, on behalf of herself and other members of the proposed Class, hereby demands a jury trial of any and all issues so triable as of right.

Dated: January 13, 2025

Respectfully Submitted,

*/s/ Rebecca A. Peterson*
Rebecca A. Peterson (241858)
**GEORGE FELDMAN MCDONALD, PLLC**
1650 W. 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9530
rpeterson@4-justice.com
eservice@4-justice.com

Lori G. Feldman, Esq.*
**GEORGE FELDMAN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
lfeldman@4-justice.com
e-service@4-justice.com

Julie Liddell*
Andrew Liddell*
**EdTech Law Center**
P.O. Box 300488
Austin, Texas 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

Attorney for Plaintiff and the Proposed Class

*Pro hac vice forthcoming**